UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
OPERATIVE PLASTERERS' & CEMENT      )
MASONS' INTERNATIONAL               )
ASSOCIATION OF THE UNITED           )
STATES AND CANADA, AFL-CIO, et al.  )
                                    )
        Petitioner,                 )
                                    )   Civil Action No. 09-1160 (RBW)
                                    )
    v.                              )
                                    )
                                    )
JORDAN INTERIORS, INC, et al.       )
                                    )
        Respondent.                 )
_____ )
                                    )
UNITED BROTHERHOOD OF               )
CARPENTERS AND JOINERS OF           )
AMERICA, et al.                     )
                                    )
        Petitioner,                 )
                                    )
                                    )
    v.                              )   Civil Action No. 09-2212 (RBW)
                                    )
                                    )
OPERATIVE PLASTERERS' & CEMENT      )
MASONS' INTERNATIONAL               )
ASSOCIATION OF THE UNITED           )
STATES AND CANADA, AFL-CIO          )
                                    )
        Respondent.                 )
_____ )

**MEMORANDUM OPINION**

These two cases arise from similar underlying facts. In Civil Action 09-cv-1160 (RBW),

the Operative Plasterers' and Cement Masons' International Association, AFL-CIO (the

"Association") petition to confirm an arbitration award entered in its favor by Arbitrator Paul

1

Greenberg pursuant to the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry ("Plan"). Petition to Confirm Arbitration Award ("Pet. to Confirm") ¶ 1. In response, the Southwest Regional Council of Carpenters ("Southwest Regional Council") and the United Brotherhood of Carpenters and Joiners of America ("Brotherhood of Carpenters") brought a counterclaim to vacate the award. Respondents' Answer to Petition to Confirm Arbitration Award and Counter-Claim ("Council Ans."). Correspondingly, in Civil Action 09-cv-2212 (RBW), the Southwest Regional Council and the Brotherhood of Carpenters brought a petition to vacate an arbitration award issued by Arbitrator Tony Kelly pursuant to the same Plan, which was also entered in favor of the Association. Petition to Vacate Arbitration Award ("Pet. to Vacate"). The Association then filed its answer and a counterclaim in this second case requesting that the Court: (1) confirm the award issued by Arbitrator Kelly, (2) order Jordan Interiors and its representatives, the Brotherhood of Carpenters and the Southwest Regional Council, to comply with the award; and (3) award attorneys fees, court costs, and expenses to the Association. Respondent's Answer to Petition to Vacate Arbitration Award and Counter-Claim to Confirm Arbitration Award ( "Ass'n's Ans.") at 12. In short, both cases involve the same parties and their resolution turns on the question of whether the awards entered by arbitrators Greenberg and Kelly are enforceable.

This matter is now before the Court on the parties' consolidated cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] See

---

[1] The Association also moves for leave to file a notice of supplemental authority, see Petitioner's Motion for Leave to File Notice of Supplemental Authority (the "Ass'n's Mot. for Leave"), which is opposed by the Southwest Regional Council and the Brotherhood of Carpenters, see Respondents' Opposition to Petitioner [the Association]'s Motion for Leave to File Notice of Supplemental Authority. Over objection, the Court consulted the supplemental authority in rendering its decision and therefore the respondent's opposition is denied. The Court also considered the following submissions in reaching its decision in these cases: the Petitioner [Association]'s Memorandum in Support of its Motion for Leave to File Notice of Supplemental Authority; Petitioner [Association]'s Notice of
(continued . . .)

Respondents' Consolidated Motion for Summary Judgment ("Council's Mot."); Petitioner [Association]'s Consolidated Motion for Summary Judgment in Case Nos. 1:09-cv-[1]160-(RBW) and 1:09-cv-02212-(RBW) ("Ass'n's Mot.").[2] Because the employees of Jordan Interiors elected the Southwest Regional Council as their exclusive representative, resulting in the National Labor Relations Board's certification of the Southwest Regional Council for that representation, the Court must grant summary judgment in part in favor of the Brotherhood of Carpenters, the Southwest Regional Council, and Jordan Interiors; vacate the award issued by Kelly; and accordingly deny the Association's motion for summary judgment in part as to the Kelly award. In regards to Arbitrator Greenberg's award, the Court must grant summary judgment in part in favor of the Association, because at the time of the arbitration Jordan Interiors was still subject to the Agreement and the award was therefore not unlawful. In addition, based on the affirmance of Arbitrator Greenberg's award, the Association is awarded the cost of its attorney fees and court expenses related to their expenditures enforcing the Greenberg award.

## I. BACKGROUND

Central to the disputes at hand is the Los Angeles Unified School District Project Stabilization Agreement ("Agreement"), a pre-hire collective bargaining agreement authorized under 29 U.S.C. § 158(f) (commonly referred to as an "8(f)" agreement). Pet. to Vacate, Ex. A

---

(. . . continued)
Supplemental Authority; and the Petitioner's Reply Brief to Respondents' Opposition to Petitioner [Association]'s Motion for Leave to File Supplemental Authority (the "Ass'n's Reply Re: Leave").

[2]  The Court also considered the following documents in resolving the motions for summary judgment: Petitioner [Association]'s Memorandum in Support of its Consolidated Motion for Summary Judgment; the Respondent's Memorandum of Points and Authorities in Support of Consolidated Motion for Summary Judgment; the Respondents' Opposition to Consolidated Motion for Summary Judgment; the Petitioner [Association]'s Memorandum in Opposition to Respondent's Motion for Summary Judgment (the "Ass'n's Opp'n."); the Respondents' Reply Brief in Support of Their Consolidated Motion for Summary Judgment ("Council's Reply").

(Agreement). A contractor can enter into a § 8(f) collective bargaining agreement, such as the Agreement here, recognizing one or more bargaining representatives despite a lack of majority support from employees. 29 U.S.C. § 158(f) (2006). The Agreement "establishes the labor relations Policies and Procedures for the District and for the craft employees represented by the Unions engaged in the District's new school and building construction and substantial rehabilitation and capital improvement program . . . ." Agreement at 1. The Agreement also contains a clause providing that those parties bound by the Agreement must recognize all signatory unions as the bargaining representatives of its employees. Id. at 12, § 3.1.

On May 12, 2003, approximately thirty labor organizations, including the Brotherhood of Carpenters and its affiliate the Southwest Regional Council, the Association and its affiliated local union (Plasterers Local 200), executed the Agreement. Petitioner [Association]'s Reply Brief in Support of its Consolidated Motion For Summary Judgment ("Ass'n's Reply") at 12.[3] Jordan Interiors, an employer that performed plastering work at construction projects, became a party to the pre-existing Agreement by signing a letter of assent on January 20, 2009, after it had been awarded contracts on two projects covered by the Agreement—the Valley Region High School No. 9 Project ("Project No. 9") and the Central Region Middle School No. 7 Project ("Project No. 7"). Id. at 14.

Pursuant to § 8.1 of Article 8 of the Agreement, all work assignments for the School District's construction projects are required to be made "in accordance with the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry." Agreement § 8.1; Ass'n's Ans., Ex. 1 (Plan for the Settlement of Jurisdictional Disputes in the Construction Industry) at 30. Under § 8.2 of the Agreement, parties to the Agreement are required to abide by the Plan's

---

[3] The Agreement was amended on or about October 31, 2003, to remain in effect through September 2013. Pet. to Confirm, Ex. 3.

4

procedures in resolving jurisdictional disputes.  Agreement at 28, § 8.2  As the Association states, a jurisdictional dispute arises "when two labor organizations have a disagreement over whether an employer has properly assigned work to be performed by a group of employees represented by one of those unions rather than a different group of employees represented by the other union."  Ass'n's Mot., Ex. 1 (Ass'n's Statement of Facts) ("Ass'n's Stmt. of Facts") ¶ 4.  After Jordan Interiors became bound by the Agreement, two separate jurisdictional disputes arose over Jordan Interiors' assignment of plastering work.  Id. ¶¶ 15, 27.  The first dispute occurred at Project No. 9, id. ¶ 15, and the second dispute developed at Project No. 7, id. ¶ 27.  Both disputes arose as a result of Jordan Interiors' assignment of plastering work to workers represented by the Southwest Regional Council and the Brotherhood of Carpenters, instead of workers represented by Plasterers Local 200.  Id. ¶¶ 15, 27.

As required by the Agreement, the Association notified the Plan's administrator of the jurisdictional dispute at Project No. 9 and the administrator assigned Arbitrator Greenberg to resolve that dispute.  Id. ¶ 18.  Although the Brotherhood of Carpenters, the Southwest Regional Council, and Jordan Interiors were provided notice of the arbitration hearing scheduled for June 12, 2009, both failed to attend or otherwise participate.  Id. ¶ 19.  Greenberg then issued his opinion on June 13, 2009, holding that the parties had stipulated to the Plan and ordered the disputed plastering work at Project No. 9 to be assigned to workers represented by the Association.  Pet. to Confirm, Ex. 6 (Decision and Award of Arbitrator Paul Greenberg) at 8.  Jordan Interiors, the Brotherhood of Carpenters, and the Southwest Regional Council have not complied with this award.  Ass'n's Mot., Ex. 1 (Ass'n's Stmt. of Facts) ¶ 26.

Shortly after Arbitrator Greenberg issued his decision, on June 22, 2009, pursuant to an election petition filed by Jordan Interiors with the National Labor Relations Board, an election

5

was held and the employees of Jordan Interiors unanimously voted for the Southwest Regional Council to be their exclusive representative.[4]  Council's Mot., Ex. 2 (Respondents' Statement of Material Facts to Which There is no Genuine Issue) ¶ 11.  Accordingly, the National Labor Relations Board certified the Southwest Regional Council as Jordan Interiors employee's exclusive representative.  Id.  In October 2009, the Association notified the Plan's administrator of the second jurisdictional dispute at Project No. 7, again invoking the Plan under the Agreement.  Id. ¶ 14.  A hearing on this dispute was held by Arbitrator Kelly on November 5, 2009, id. ¶ 18, and again the Brotherhood of Carpenters, Southwest Regional Council, and Jordan Interiors did not attend or participate despite being provided notice of the hearing, Ass'n's Mot., Ex. 1 (Ass'n's Stmt. of Facts) ¶ 31.  On November 10, 2009, Kelly issued his opinion which ordered Jordan Interiors to assign the disputed work at Project No. 7 to employees represented by the Association.  Id. ¶ 33.  Jordan Interiors, the Brotherhood of Carpenters, and the Southwest Regional Council have not complied with the decision making this award.  Id. ¶ 34.

Currently before the Court are the parties' consolidated cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, arguing for or against the enforceability of the two arbitration awards.  Specifically, the Brotherhood of Carpenters and the Southwest Regional Council request that the Court vacate both arbitration awards, Council's Mot. at 1-2, while the Association requests that the Court affirm the awards, Ass'n's Mot. at 1.

---

[4]  Unlike the sequence of events portrayed by the Brotherhood of Carpenters and the Southwest Regional Council, that "the election certification occurred before the Plan arbitrators issued their contractual arbitration award," Council's Reply Brief in Support at 4, it appears based on the record that the election was held over one week after Arbitrator Greenberg issued his award on June 13, 2009.  See Pet. to Vacate, Ex. B (Tally of Ballots); Pet. to Confirm., Ex. 1 (Decision and Award of Arbitrator Paul Greenberg) at 8.

The Brotherhood of Carpenters and the Southwest Regional Council argue that the awards are invalid and should be vacated for two reasons. First, they maintain that there was no valid contract between the Association and Jordan Interiors that authorized the arbitration. Respondents' Reply Brief in Support of Their Consolidated Motion for Summary Judgment at 1-2 ("Council's Reply"). They assert that once the employees of Jordan Interiors exercised their rights under 29 U.S.C. § 157 and selected the Southwest Regional Council as their exclusive representative, any conflicting contractual rights that the Association had with Jordan Interiors under the § 8(f) pre-hire Agreement were rendered void. Id. Second, the Brotherhood of Carpenters and the Southwest Regional Council allege that both awards are "repugnant" to the National Labor Relations Act because ordering Jordan Interiors to assign work to workers represented by Plasterers Local 200 "not only impinge[s] on the Board's election certification of the [Southwest Regional Council] and the Section 7 rights of Jordan Interiors' employees but directly violate[s] both . . . ." Id. at 14.

In contrast, the Association asserts that the certification of the Southwest Regional Council as Jordan Interiors employees' representative is irrelevant as a matter of law and that all of the parties remain contractually bound by the Agreement and accordingly the Plan and its jurisdictional dispute resolution procedures. Ass'n's Reply at 16. Moreover, the Association contends that the arbitration awards are not repugnant to the National Labor Relations Act because the disputes that resulted in the awards are jurisdictional and to reassign the disputed work to Plasterers Local 200 would not interfere with the employees of Jordan Interiors choice of representation. Id. Thus, the two issues before the Court are: (1) whether the election and subsequent certification of the Southwest Regional Council as the exclusive representative of Jordan Interiors' employees voided the Agreement between the parties, but, if the Agreement

7

was valid, (2) whether the arbitration awards are "repugnant" to or violate § 7 the National Labor Relations Act. Council's Reply at 14.

## II. STANDARD OF REVIEW

This Court will grant a motion for summary judgment under Federal Rule of Civil Procedure 56 if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). When evaluating such a motion, the Court must view the evidence "in the light most favorable to the non-moving party." Evans v. Sebelius, 674 F. Supp. 2d 228, 238 (D.D.C. 2009) (citations omitted). The Court must also accept evidence provided by the non-moving party as true, drawing "all justifiable inferences" in the non-moving party's favor. Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

With respect to this Court's review of arbitration awards, "when parties to a collective bargaining agreement have agreed to submit to arbitration, the function of the court is extremely limited." Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 254 F. Supp. 2d 12, 14 (D.D.C. 2003) (citing Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1473 (D.C. Cir. 1997) (internal citations omitted)). Accordingly, in such circumstances a court "ha[s] no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim," because it is the arbitrator who determines the validity of the moving party's position. United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 568 (1960) (footnote omitted).

"Although [c]ourts exercise only limited review of the merits of an arbitrator's decision in a labor dispute, they retain full authority to vacate awards that fail to confine themselves to matters within the scope of the arbitrator's assigned jurisdiction."  Howard Univ. v. Metro. Campus Police Officer's Union, 519 F. Supp. 2d 27, 32 (D.D.C. 2007) (alteration in original) (quoting Commc'n Workers of Am., AFL-CIO, CLC v. Am. Tel. & Tel. Co., 903 F.Supp. 3, 5 (D.D.C. 1995) (internal quotations and citations omitted)).  Moreover, it is well established that an arbitration award must "draw its essence from the parties collective bargaining agreement." Id.

## III. ANALYSIS

### A.     The Arbitration Awards

For an arbitration award rendered pursuant to a collective bargaining agreement to be enforced, the arbitrator must "have the contractual authority to" issue the award.  Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 744 (1981) ("An arbitrator's power is both derived from, and limited by, the collective-bargaining agreement.").  Even though parties entered into a valid collective bargaining agreement, and despite the great deference courts must accord to arbitrators, an arbitration award may nonetheless be unenforceable if: (1) the collective bargaining agreement was subsequently terminated and the arbitrator was not able to consider the full effects of the award given the agreement's termination, see Pioneer Natural Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Int'l Union, 338 F.3d 440, 441 (5th Cir. 2003) (per curiam); or (2) the award "is in 'explicit conflict' with 'other laws and legal precedents,'" Am. Postal Workers Union v. U.S. Postal Serv., 550 F.3d 27, 32 (D.C. Cir. 2008) (citing United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 43 (1987)) (internal quotation marks omitted).

9

While there is a general requirement for employers to obtain majority support from employees before signing collective bargaining agreements, the National Labor Relations Act creates a limited exception to this requirement for the construction industry. 29 U.S.C. § 158(f). Because of the unique nature of the construction industry, under § 8(f) a contractor may enter into a pre-hire agreement that recognizes one or more representatives despite the lack of majority employee support. Id. However, § 8(f) also offers protection to employees in such circumstances by allowing them to decertify or change representatives at anytime during the relationship through an election. Id.; see also Nova Plumbing v. NLRB, 330 F.3d 531, 534 (D.C. Cir. 2003).

As the National Labor Relations Board concluded: "In the event of an election, a vote in favor of the signatory union, or a rival union, will result in that union's certification and the full panoply of [§] 9 rights and obligations. A vote to reject the signatory union will void the [§] 8(f) agreement and will terminate the [§] 8(f) relationship." Deklewa v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Local 3, AFL-CIO, 282 N.L.R.B. 1375, 1385 (1987).[5] Termination of the § 8(f) relationship occurs because the § 7 protections accorded to employees, including the "right to self-organization, to form, join, or assist labor organizations, [and] to bargain collectively through representatives of their own choosing," 29 U.S.C. § 157, are fundamental; these rights are often considered superior to the contractual obligations derived from collective-bargaining agreements, such as those derived from pre-hire agreements, which

---

[5] While the National Labor Relations Board's interpretation of the National Labor Relations Act in the Deklewa decision is not binding on this Court, the District of Columbia Circuit in Nova Plumbing recognized the persuasiveness of the Board's decisions in giving meaning to the Act. See 330 F.3d at 537–38; see also Joyce v. Silveri Tile Co., L.C., 27 F. Supp. 2d 251, 255-56 (D.D.C. 1998).

were not endorsed by majority employee support. See Nova Plumbing, 330 F.3d at 537. When a union is elected as the exclusive bargaining representative for a group of employees, that union is the sole representative of the employees on issues concerning "rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. § 159(a) (2006).

## I. Arbitrator Kelly's Award

Upon the National Labor Relations Board certifying a union as the exclusive representative of a group of employees, any pre-existing contractual obligations arising from a § 8(f) agreement that recognizes other signatory unions as the employees' representatives are nullified. See Nova Plumbing, 330 F.3d at 536–37 ("An agreement between an employer and union is void and unenforceable, [Int'l Ladies' Garment Workers' Union, AFL-CIO v. NLRB, 366 U.S. 731, 738 (1961)], if it purports to recognize a union that actually lacks majority support as the employees' exclusive representative."); M.R.S. Enters., Inc. v, Sheet Metal Workers Int'l Ass'n, Local 40, 429 F. Supp. 2d 72, 81 (D.D.C. 2006) (citing Mesa Verde Constr. Co. v. N. Cal. Dist. Council of Laborers, 861 F.2d 1124, 1128 (9th Cir.1988)) (reiterating that "collective bargaining agreements, including pre-hire agreements may . . . be . . . terminated during their term [if] a National Labor Relations Board-certified election reveals that the union does not hold the support of the majority of the bargaining unit"); Pioneer, 338 F.3d at 441 (holding that "[w]hen the [National Labor Relations Board] decertified the Union . . . , the [collective bargaining agreement] automatically terminated by operation of law"); Cent. States, Se. & Sw. Areas Pension Fund v. Schilli Corp., 420 F.3d 663, 669–70 (7th Cir. 2005) (holding that, although decertification normally terminates a union's rights to enforce an agreement, the agreement was nonetheless enforced because action to enforce it was brought under 29 U.S.C. § 1145).

11

Here, the arbitration award issued by Arbitrator Kelly in November 2009 required Jordan Interiors to reassign the Project No. 7 plastering work to members of Plasterers Local 200. Ass'n's Mot., Ex. 1 (Ass'n's Stmt. of Facts) ¶ 33. However, that award was undisputedly made after the employees of Jordan Interiors unanimously elected the Southwest Regional Council to serve as their exclusive bargaining representative in June 2009. See Pet. to Vacate ¶¶ 1, 19 (indicating the election occurred on June 22, 2009); Pet. to Vacate ¶ 25 (indicating Arbitrator Kelly issued his decision on November 10, 2009). In Pioneer, the National Labor Relations Board decertified the union that was a party to the collective bargaining agreement, 338 F.3d at 441, while here the National Labor Relations Board certified the Southwest Regional Council as the exclusive representative of Jordan Interiors' employees. See Pet. to Vacate ¶ 19. The two situations are analogous as a practical matter, as the certification of the Southwest Regional Council, giving it exclusive bargaining rights under 29 U.S.C. § 159, effectively operated as a decertification of the other signatory unions to the Agreement, one being the Association, by relinquishing their bargaining power in regard to the Jordan Interiors employees. See 28 U.S.C. § 159; Ass'n's Opp'n. at 17 (acknowledging that the National Labor Relation Board's certification of the Southwest Regional Counsel gave the Southwest Regional Counsel exclusive bargaining rights in regard to Jordan Interiors' employees). Like the court in Pioneer, which found the entire collective bargaining agreement void prospectively as a matter of law from the date of the National Labor Relations Board's decertification of the signatory union, 338 F.3d at 441, this Court finds that the entire Agreement between Jordan Interiors and the Association was invalidated by the election of June 22, 2009.

Unlike the facts of Schilli Corp., cited by the Southwest Regional Council and the Brotherhood of Carpenters, where the court noted that the "decertification terminated the union's

right to enforce the agreement" but nonetheless enforced the collective bargaining agreement in an action brought under 29 U.S.C. § 1145, which accords greater rights to "to enforce the writing without regard to understandings or defenses applicable to the original parties," 420 F.3d at 669-70 (internal quotations and citations omitted), the claims here were not filed pursuant to any such statute that mandate the Agreement's enforcement, see generally Pet. to Confirm; Pet. to Vacate.

The employees of Jordan Interiors exercised their rights guaranteed by 29 U.S.C. § 157 and unanimously selected the Southwest Regional Council as their exclusive representative. Pet. to Vacate ¶ 19. From the date of their vote, the pre-hire Agreement, which purported to recognize multiple representatives, was terminated. See Deklewa, 282 N.L.R.B. at 1386. Although Jordan Interiors was subject to the Plan and its arbitration clause through the Agreement, Ass'n's Reply at 13, once the Agreement was terminated, Jordan Interiors was no longer bound by the terms of the Plan. Thus, summary judgment as to the Kelly award must be granted in favor of the Southwest Regional Council and the Brotherhood of Carpenters, and Kelly's arbitration award approving the grant of work at Project No. 7 to Plasterers Local 200 is vacated because a valid agreement did not exist when the arbitration award was issued. See Barrentine, 450 U.S. at 744.

## II. Arbitrator Greenberg's Award

An arbitration award is invalid if: (1) there was no valid collective bargaining agreement at the time the arbitration was conducted, see Barrentine, 450 U.S. at 744; (2) there was a valid collective bargaining agreement at the time of the arbitration but the agreement was subsequently terminated and the arbitration award has the impact of enforcing the agreement, Pioneer, 338 F.3d at 441; Int'l Chem. Workers Union v. BASF Wyandotte Corp., 774 F.2d 43, 45 (2d Cir.

1985); or (3) the award is unlawful or repugnant to the National Labor Relations Act, see Am. Postal Workers, 550 F.3d at 32.

When an arbitration award is issued pursuant to an arbitration clause of a collective bargaining agreement that is subsequently terminated, some courts have been unwilling to enforce the award after the agreement's termination if the award has the effect of reinforcing the agreement. See, e.g., Pioneer, 338 F.3d at 441; Int'l Chem., 774 F.2d at 45. The Fifth Circuit in Pioneer, for instance, affirmed the district court's ruling that an arbitration award requiring the payment of back pay to employees was unenforceable following the union's decertification and termination of the collective bargaining agreement negotiated by the union that provided for back pay because the arbitrators "could not have considered the effect of the award after the termination of the [agreement]," 338 F.3d at 441 (citing Int'l Chem., 774 F.2d at 45). The court reasoned that the disputed award, even though administered before the agreement was terminated, had the practical effect of enforcing the agreement after its termination. Id. Similarly in International Chemical Workers Union, the Second Circuit held that "the district court erred in requiring reinstatement and back pay [imposed by the arbitration award] . . . after . . . the date of the expiration of the old collective bargaining agreement" because the arbitration award had the effect of enforcing the terminated agreement. 774 F.2d at 47.

Here, the record clearly shows that Arbitrator Greenberg's award was issued on June 13, 2009, while the Jordan Interiors employee's election was held over a week later on June 22, 2009. See Pet. to Confirm, Ex. 6 at 8; Council's Mot., Ex 2 ¶ 11. While Jordan Interiors' obligations under the Agreement may have been terminated as a matter of law on the day of the election, June 22, 2009, Council's Mot., Ex 2 ¶ 11, the Court finds that Greenberg did have authority to issue his award on June 13, 2009, because the election had not yet occurred and the

14

Agreement had therefore not been terminated at that time. Similar to the facts of both <u>Pioneer</u> and <u>International Chemical Workers Union</u>, where the arbitrators issued their awards before the termination of the collective bargaining agreement, 338 F.3d at 441; 774 F.2d at 45, here, Greenberg issued his decision before the termination of the Agreement. <u>See</u> Pet. to Confirm, Ex. 6 at 8. However, in contrast to both <u>Pioneer</u> and <u>International Chemical Workers Union</u>, where the courts refused to enforce the awards after the termination of the collective bargaining agreements because requiring back pay and the reinstatement of employees had the practical effect of enforcing those agreements, <u>Pioneer</u>, 338 F.3d at 441; <u>Int'l Chem.</u>, 774 F.2d at 45, Greenberg's award requiring Jordan Interiors to reassign the disputed work at Project No. 9 to workers represented by Plasterers Local 200 does not have the impact of enforcing the Agreement and does not violate the representational rights of Jordan Interiors' employees. Ass'n's Opp'n. at 4.

The Southwest Regional Council and Brotherhood of Carpenters argue that in order to enforce Greenberg's award, Jordan Interiors would have to violate the National Labor Relations Act by refusing to honor its workers' § 7 rights and "forc[ing] its employees to accept the [Association] as their representative or terminat[ing] the employees and replac[ing] them with [Association-]represented workers . . . " Council's Reply at 3. The Association contends that as an alternative Jordan Interiors could "subcontract the plastering work to a contractor who employs workers represented by Plasterers Local 200 and the [Association]" without violating any § 7 rights because the certification of representation extends only to the employees and reassignment of work does not affect such representation. Ass'n's Opp'n. at 3–4. In response, while admitting that such an alternative is possible, the Southwest Regional Council and the Brotherhood of Carpenters state that this approach "punishes Jordan Interiors' employees for

15

having selected the [Southwest Regional Council] as their representative by forcing Jordan Interiors to take the disputed work away from the [Southwest Regional Council]-represented employees and giving it to [Association]-represented employees." Council's Reply at 13. However, given that the Southwest Regional Council and the Brotherhood of Carpenters have not conclusively established that complying with the award would violate the National Labor Relations Act, and because the National Labor Relations Board states that certification of a union as the exclusive bargaining representative of a unit of employees "'does not per se preclude the employer from adding to, or subtracting from, the employees' work assignments,'" Employing Plasterers Ass'n of D. C., Inc., 118 N.L.R.B. 17, 19 (1957) (quoting Plumbing Contractors Ass'n, 93 N.L.R.B. 1081, 1087 (1951)), the Court is more persuaded by the Association's position on the issue.

And if, as the Southwest Regional Council and the Brotherhood of Carpenters acknowledge, it is possible for Jordan Interiors to subcontract the disputed work to employees represented by Plasterers Local 200 without infringing upon its employees' choice of their exclusive bargaining representative, then there is a manner in which the arbitration award can be enforced lawfully. See Council's Reply at 13. And while the result of such subcontracting may deprive Jordan Interiors' employees of performing certain work, id., neither party has established that the subtraction or addition of work by an employer is precluded by certification, nor that so doing is repugnant to the National Labor Relations Act or otherwise unlawful.[6] See Plumbing Contractors Ass'n., 93 N.L.R.B. at 1087.

Therefore, because Greenberg's award must be confirmed, summary judgment is granted in part to the Association and denied in part to the Southwest Regional Council and the

---

[6] The Court leaves for the parties to resolve the method of complying with the award, so long as the method adopted does not violate the National Labor Relations Act.

16

Brotherhood of Carpenters. Specifically the Court finds: (1) that the Agreement was valid when Greenberg issued his arbitration award; (2) that implementation of the award, despite the subsequent termination of the Agreement, will not have the effect of enforcing the Agreement; and (3) that the award may be enforced in a manner that is not unlawful or repugnant to the National Labor Relations Act.

B.     **Attorney Fees and Costs associated with Civil Action 09-cv-1160-RBW**

Article VII § 2(c) of the Plan provides that a "party seeking enforcement of an Arbitrator's decision . . . due to the failure of another party to abide by the decision or ruling shall be reimbursed by the party failing to abide by the decision or ruling for any attorneys' fees, court costs and expenses incurred." Ass'n's Ans., Ex. 1 at 30. Because the Court has found that the parties to this dispute are bound to comply with the terms of the Agreement and therefore also the Plan in regards to the Greenberg award, and given that it is undisputed that Jordan Interiors, the Southwest Regional Council, and the Brotherhood of Carpenters have failed to comply with Greenberg's decision, Ass'n's Mot., Ex. 1 ¶¶ 26, the Court finds that the Association is entitled to an award of attorney's fees and court costs associated with enforcing the Greenberg award. On the other hand, regarding the Kelly award, because the Court finds that this award must be vacated due to a lack of a valid Agreement when the award was issued, attorney's fees and costs cannot be awarded to the Association based on its efforts to enforce this award.

## IV. CONCLUSION

Because the Kelly arbitration award regarding Project No. 7 was issued months after the termination of Jordan Interiors' obligations under the Agreement, which required Jordan Interiors to comply with the Plan, Kelly had no authority to issue the award and thus his award

must be vacated. With respect to the Greenberg arbitration award, regarding Project No. 9, the award must be confirmed given that: (1) the Agreement was terminated over a week after Greenberg issued his award, (2) the implementation of the award will not have the effect of enforcing the terminated Agreement; and (3) the award is not unlawful or repugnant to the National Labor Relations Act. For these reasons, the Court must grant summary judgment in part in favor of the Brotherhood of Carpenters and the Southwest Regional Council in regards to the Kelly arbitration award and therefore vacate that award, and accordingly must deny summary judgment in part in regards to the Association as to the Kelly award. Further, the Court must grant summary judgment in part in favor of the Association in regards to the Greenberg arbitration award and therefore confirm that award, and must deny summary judgment in part with respect to the Southwest Regional Council and the Brotherhood of Carpenters as to the Greenberg award. Additionally, the Court finds that the Association is entitled to recover its attorney fees and court costs associated with the enforcement of the Greenberg award but not in regards to its efforts to enforce the Kelly award.[7]

_____/s/_____
REGGIE B. WALTON
United States District Judge

---

[7] The Court will issue an Order consistent with this Memorandum Opinion.